IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
AUG 23 2018
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| David Leslie Carmichael, Jr., Plaintiff, | ) | |
| v. | ) | 1:15cv1381 (CMH/MSN)[1] |
| Karen Brown, et al., Defendants. | ) | |

MEMORANDUM OPINION

David Leslie Carmichael, Jr., a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his right to due process when they determined him to be ineligible for discretionary parole. The matter is now before the Court on a Renewed Motion for Summary Judgment filed jointly by the defendants, the current members and former chairman of the Virginia Parole Board ("VPB"). [Dkt. No. 56] For the reasons which follow, defendants' Motion will be granted. Also pending before the Court are plaintiff's Cross-Motion for Summary Judgment, which will be denied, as well as several motions by the plaintiff for various forms of relief, most of which also will be denied. [Dkt. No. 63 - 67, 69 - 70]

## I. Background

Plaintiff is an inmate committed to the Virginia Department of Corrections ("VDOC"), having begun the service of a sentence of life plus two years on July 26, 1985 following his conviction of murder and a weapons offense. [Dkt. No. 57, Ex. 1, Bennett Aff. ¶ 4.][1] He became eligible for discretionary parole on August 21, 1997. Id. Since then, the VPB has reviewed Carmichael for discretionary parole and determined him to be unsuitable for such relief

---

[1]The affiant, Adrianne L. Bennett, is the current Chairman of the VPB. Aff. ¶ 1.

on eleven separate occasions. [Bennett Aff. ¶ 10, Enc. B]

The VPB's procedures for reviewing offenders are governed by the VPB Policy Manual, copies of which are available in all Virginia institutional libraries. [Bennett Aff. ¶ 4] Specifically, the law library at Greensville Correctional Center ["GCC"], where Carmichael has been confined throughout the pendency of this lawsuit, has always maintained a copy of the VPB Policy Manual and makes it available for review to inmates. [Bennett Aff. ¶ 5, Enc. A][2] It is also available online.[3] Carmichael acknowledges that he received a handbook prepared by VDOC's Parole Release Unit in cooperation with the VPB in October, 1985 setting out "the rules and regulations governing his parole criteria." [Dkt. No. 72 at 6] He received an updated handbook in 1990, and when he misplaced it he was provided with a new copy. Id. at 7.

The Parole Decision Factors from the VPB Policy Manual were approved by Virginia's Governor in July, 1997, and the VPB members have used them since then in making parole release decisions, regardless of the offender's date of conviction. [Bennett Aff. ¶ 6, Enc. A] There have been only two updates to the promulgated release criteria in the interim, neither of which appear to have had any impact on Carmichael's status.[4] In considering an offender's suitability for discretionary parole, the VPB considers many factors, including the nature of his offense, the length of his sentence, the amount of time he has served, his criminal history, any prior experience he may have had under supervision, his risk to the community, his personal and

---

[2]In his Cross-Motion for Summary Judgment, plaintiff states that the "the VPB policy manual [at GCC] is not up to date as of this mailing, and is missing numerous items." [Dkt. No. 72 at 3-4] He does not elaborate further as to the manner in which he believes the manual to be deficient.

[3]See http://vpb.virginia.gov/ files/1107/vpb-policy-manual.pdf.

[4]On October 1, 2006, "Risk Assessment Data" was removed from the category "Results of Scientific Data," and language was removed which had followed "Information from Lawyers, Family Members, Victims and Other Persons." [Bennett Aff. ¶ 6].

social behavior, his institutional experience including program participation and behavior, his release plan, and his institutional and family resources. [Bennett Aff. ¶ 7, Enc. A] Input may also be provided to the VPB by the inmate's family members, friends, attorneys, and other interested parties, as well as by victims and their families. Id.

Members of the VPB consider many factors in determining whether an offender should be released on parole. They include the nature of the offenders' current offense, the length of his sentence, the amount of time he has served, his criminal history, his prior experience under supervision, the risk he would pose to the community, his personal and social behavior, the quality of his institutional experience in such things as program participation, the changes in his motivation and behavior, his release plan, and the extent of his community and family resources. [Bennett Aff. ¶ 6].

The VPB consists of five members, including the chairman. Pursuant to VPB policy, a parole examiner interviews a parole-eligible inmate at his facility, and the offender is allowed to present oral and written statements. [Bennett Aff. ¶ 7][5] The examiner then submits a report to an online information system maintained by the Virginia Department of Corrections. The system transmits the report to a VPB member who reviews the case and enters his or her vote. The matter is then forwarded in turn to additional VPB members. Id. Where an offender like the Carmichael is serving a life sentence for a homicide conviction, four members of the VPB must concur to grant parole, and in all other cases three members must agree. Id. Therefore, not all members of the VPB see every case, because if the first three members to review a case determine that the offender should not receive parole, the case is not transmitted to the remaining

[5]Carmichael states that his "past few" parole interviews were conducted by video conference, and he was not able to present written statements. [Dkt. No. 72 at 4]

members since at that point further review is futile. [Bennett Aff. ¶ 8].

Although an offender maybe eligible for discretionary parole consideration, he may not be suitable for parole release. In making such a determination, the VPB is very concerned about public safety; therefore, the nature and circumstances of an offender's crimes and criminal history when weighed against all mitigating and aggravating factors may preclude his release on parole. If the VPB does not have sufficient confidence that an offender will succeed on parole, or that his release would serve the interest of society, parole may be denied. [Bennett Aff. ¶ 13]

In Carmichael's case, he was first reviewed and deemed unsuitable for discretionary parole release on April 9, 1997. [Bennett Aff. ¶ 10, Enc. B] Additional reviews resulting in the same determination occurred in 1998, 2001, 2004, 2007, 2010, 2011, 2014 and 2015. Id.[6]

On June 27, 2014, the VPB addressed a letter to Carmichael advising him that after considering a multitude of factors, it had determined not to grant parole based primarily on te reasons that his release at that time would diminish the seriousness of his crime, he was considered a risk to the community, and the serious nature and circumstances of his offense. [Bennett Aff. ¶ 9; Att. B]

In July, 2015, Carmichael again was reviewed for possible release on discretionary parole, and by letter dated August 3, 2015, he was notified that parole had been denied primarily on the grounds of poor institutional adjustment, his release would diminish the seriousness of his crime, he was considered a risk to the community, the serious nature and circumstances of his

---

[6]Carmichael disputes the authenticity of theses letters because they were signed by Ms. Bennett, who did not become the chairman of the VPB until 2017. [Dkt. No. 72 at 7] Defendants explain that several of these letters "erroneously reflect Adrianne Bennett's signature because they were computer-generated." Although Bennett did not become Chair of the VPB until 2017, "the original copies of these denial letters were signed by the Chair of VPB on the date of the letter." [Dkt. No. 57 at 4, n. 12]

offense, and the VPB had concluded that he should serve more of his sentence prior to his release on parole. Id.

On August 15, 2016, Carmichael again was reviewed and determined to be unsuitable for discretionary parole release. In a letter dated August 16, 2016, defendant former VPB chairman Karen Brown informed Carmichael of the decision and advised him that it was based primarily on the factors that plaintiff's release at that time would diminish the seriousness of his crime; the nature of the crimes he committed; the Board's consideration that he posed a risk to the community; and the serious nature and circumstances of his crimes. [Bennett Aff. ¶ 9; Att. B] On September 11, 2016, plaintiff requested an appeal or reconsideration of the VPB's decision. He argued that he met the criteria for parole because it was his first time in prison, a forensic psychologist had supplied an opinion that he was not a threat to himself or anyone, others who were convicted of first degree murder were released every year, he had been incarcerated for 33 years, and his institutional counselor told him he needed no treatment or vocational programs. Plaintiff's request was denied on September 26, 2016, on the determinations that he had provided no new significant information, his statements did not affect the reasons he was not granted parole, and he did not show significant error in the VPB's information or its application of its policies and procedures. [Bennett Aff. ¶ 10; Att. C].

Carmichael was considered again for discretionary parole release in 2017, and the VPB determined not to grant parole on August 29, 2017. His subsequent request for an appeal or reconsideration was denied on the ground that he had provided no significant new information and the information he did provide did not affect the reason or reasons he was not granted parole. [Bennett Aff. ¶ 12, Enc. D] It is expected that Carmichael will again be considered for discretionary parole later this year. [Bennett Aff. ¶ 14]

Carmichael filed this lawsuit on October 5, 2015, arguing that the defendants violated his right to due process by denying him discretionary parole.[7] In April, 2017, defendants moved for summary judgment, and that motion was denied without prejudice to their ability to file a renewed motion for summary relief. [Dkt. No. 46, 55] Defendants filed the renewed summary judgment motion now under consideration along with a supporting memorandum and exhibits in January, 2018, and provided Carmichael with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 56 - 58] In response, Carmichael filed a Cross-Motion for Summary Judgment with a supporting Declaration. [Dkt. No. 72, 61] Accordingly, the matter is now ripe for disposition.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita

[7]For federal purposes, a pleading submitted by an incarcerated litigant is deemed filed when it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988); Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991) Here, Carmichael's initial complaint and related filings are dated October 5, 2015, and in the absence of evidence to the contrary the Court presumes that they were placed in the prison mailing system on that same date.

Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

**III. Defendants' Renewed Motion for Summary Judgment**

In 1994, discretionary parole was abolished for all Virginia prisoners who committed felony offenses on or after January 1, 1995. See Va. Code § 53.1-165.1. This legislation did not affect the availability of parole for persons like Carmichael who committed their crimes prior to 1995. Burnette v. Fahey, 687 F.3d 171, 175 (4th Cir. 2012).

The administration of the discretionary parole system is entrusted to the VPB, and the VPB has "the broadest discretion" in carrying out its responsibilities. Jennings v. Parole Board of Va., 61 F.Supp.2d 462, 466 (E.D.Va. 1999); see also, Burnette, 687 F.3d at 175. Pursuant to Va. Code § 53.1-136, the VPB is obligated to "[a]dopt ... general rules governing the granting of parole and eligibility requirements ...," and further instructs that the VPB "shall ....[r]elease on parole" those inmates who are parole-eligible and "are found suitable for parole, according to

those rules" adopted by the VPB. Va. Code § 53.1-136(2)(a). "[F]ar from creating a presumption that release will be granted, [this statute] absolutely prohibits parole unless the Parole Board decides otherwise." James v. Robinson, 863 F.Supp. 275, 277 (E.D.Va. 1994). The VPB may not release an inmate without first conducting a "thorough investigation ... into [his] history, physical and mental condition and character and his conduct, employment and attitude while in prison," and "determin[ing] that his release on parole will not be incompatible with the interests of society or of the prisoner." Va. Code § 53.1-155(A). The VPB generally must consider parole-eligible inmates on an annual basis, but it may defer review for up to three years if an inmate has at least ten years remaining to serve on his sentence. Va. Code § 53.1-154.

A. Statute of Limitations

To the extent that Carmichael seeks to challenge the VPB's denials of discretionary parole from 1997 until October 5, 2013, his claims are time-barred. There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Virginia has a two-year statute of limitations for personal injury claims under Va. Code. Ann. § 8.01-243(A), which is the applicable statute of limitations in this action. See Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991). While the limitation period is borrowed from state law, "the question of when a cause of action accrues under 42 U.S.C. § 1983 remains one of federal law." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). Causes of action accrue under federal law when a plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. (citing United States v. Kubrick, 444 U.S. 111, 122-24(1979)).

In this case, the VPB promptly notified Carmichael by letter each time it denied him

discretionary parole. The first six such letters were dated July 6, 1998; June 12, 2001; June 10, 2004; June 13, 2007; July 30, 2010; and June 27, 2011. [Bennett Aff. ¶ 9; Enc. B] Any cause of action arising from each of these denials accrued on the date each letter was sent. See Richards v. Muse, No. 1:13cv1472 (CMH/JFA), 2015 WL 853886, at *4 (holding that an inmate's causes of action against VDOC and the VPB accrued when those agencies notified him that he had been found to be ineligible for discretionary parole), aff'd, 611 Fed. App'x 787 (4th Cir. Aug. 12, 2015); see also, Hoskin v. Brown, No. 1:14cv759, 2015 WL 5247593, at *3 (E. D. Va. Sept. 8, 2015) (same). Since Carmichael did not file this lawsuit until October, 2015, any challenges to these individual denials of discretionary parole are time-barred.

Carmichael argues in Cross-Motion for Summary Judgment that the limitations period should be deemed to have commenced when parole was denied in 2015, because that is when he realized that the denial was unconstitutional. [Dkt. No. 72 at 13] Carmichael's position is misplaced. Under federal law, for a cause of action to accrue the plaintiff must know that he has been hurt and who inflicted the injury. Kubrick, 444 U.S. at 122-24. Once a plaintiff is imputed with that knowledge, he is on inquiry notice, which imposes on him a duty to inquire about the details of the cause of action that are reasonably discoverable. Accrual of a claim does not "await awareness by the plaintiff that the injury was negligently inflicted," id. at 123; instead, it occurs either when the plaintiff has knowledge of his claim or when he is put on notice - by the knowledge of the fact of his injury and of who caused it - to make reasonable inquiry which would reveal the existence of a colorable claim. Here, then, the fact that Carmichael assertedly did not become subjectively aware of what he terms the unconstitutionality of his parole denials until 2015 is not determinative of the date his cause of action accrued.

Carmichael also asserts - presumably although not explicitly in connection with the issue

of the timeliness of his claims - that "[t]he allegations in [his] declaration portray a 'continuing violation' doctrine ...." [Dkt. No. 72 at 9] The principle upon which Carmichael apparently seeks to rely has no relevance here. To establish a continuing violation, a plaintiff must show "a series of separate acts" where "the same alleged violation is committed at the time of each act." This is distinguishable from the continuing ill effects of an original violation. See A Society Without a Name v. Commonwealth, 655 F.3d 342, 348 (4th Cir. 2011). The fact that Carmichael has been apprised at a series of reviews that he remains ineligible for discretionary parole is nothing more than the ongoing effect of the determination made by the VPB in 1997, so the § 1983 claims he raises here as to the first six denials of discretionary parole are time-barred. See id. at 349 (finding equal protection claims time-barred where neither continuation of homeless services at old facility or addition of services at new facility constituted continuing violations, but rather amounted to continuing effects of the challenged decision which occurred more than two years before § 1983 suit was filed).

Lastly, to the extent that Carmichael argues that the VPB wrongfully applied the parole procedures adopted in 1997 rather than those which were in place when he was sentenced in 1985, his claim also is time-barred. That is so because Carmichael was made aware of the factors the VPB applied the first time he was denied discretionary parole in a letter dated April 9, 1997. [Bennett Aff. ¶ 10, Enc. B] He was notified again of the factors that were applied in denying him discretionary parole in each of the subsequent letters he received from the VPB. Id. Thus, because Carmichael was aware of the facts underlying his claim regarding the factors applied by the VPB by April, 1997, over eighteen (18) years prior to the date he filed this lawsuit, that claim likewise is time-barred. Nasim, 64 F.3d at 955.

B. Retroactivity

Carmichael contends that when he was sentenced in 1985 the parole eligibility requirements gave him a "legitimate claim of entitlement" to discretionary parole. Am. Compl. ¶¶ 11, 13. He further asserts that the VPB's application of the parole procedures that were put in place in 1997 in denying him discretionary parole "retrospectively created harsher guidelines" than he would have faced using the if the policies that were in place when he was sentenced had been utilized. Essentially, he contends that application of the 1997 procedures to his entitlement to discretionary parole violates his rights under the *ex post facto* clause. For the following reason, however, he is mistaken.

Contrary to Carmichael's position, the *ex post facto* clause does not forbid every legislative change that has a conceivable risk of affecting a prisoner's punishment. See California Dep't of Corr. v. Morales, 514 U.S. 499, 508 (1995). A policy change to exercise pre-existing statutory powers, without a change in the law, is not an *ex post facto* violation. United States v. Ellen, 961 F.2d 462 (4th Cir. 1992). Thus, a change in administrative policy or the interpretation of a statute that was in effect at the time criminal conduct takes place does not violate the *ex post facto* clause. Id.; see also, Brown-El v. Virginia Parole Board, 948 F. Supp. 558, 561 (E.D. Va. 1996). In addition, no *ex post facto* violation occurs when a "procedural change" in policy occurs that does not alter the terms of the original sentence or the prisoner's maximum possible sentence. See Woodley v. VDOC, 74 F.Supp.2d 623, 631-32 (E.D. Va. 1999). Thus, a law which is merely procedural and does not add to the quantum of a prisoner's punishment cannot violated the *ex post facto* clause even if it is applied retroactively. Id.

Here, then, the key question is whether the VPB's new policy amounted to a law or a procedural change. It is established that an administrative agency's actions will support an *ex post facto* claim only if the agency develops legislative rules. Ellen, 961 F.2d at 462. The VPB

is an administrative agency but it does not create laws; rather, it develops guidelines to use in setting the terms of prisoners' parole on an individualized basis. Woodley, 74 F.Supp.2d at 631-32. A policy statement like the one at issue here is akin to a guideline or recommendation. Id. The *ex post facto* prohibition does not apply to a "change is guidelines assisting [a government agency] in the exercise of its discretion." Id. (quoting Portley v. Grossman, 444 U.S. 1311, 1313 (1980)). "The *ex post facto* clause is inapplicable where parole guidelines or policy statements 'do not have the force and effect of law but are merely policies that show how ... discretion is likely to be exercised.'" Id. (quoting Dufresne v. Baer, 744 F.2d 1543, 1550 (11th Cir. 1984)).

In Warren v. Baskerville, 233 F.3d 204, 208 (4th Cir. 2000), the VPB had adopted a policy in May, 1995 that required all violators of mandatory parole to serve all of their original sentences without the benefit of accumulated good time credits. In considering the issue of whether that policy could be applied to an inmate who violated parole after that date but whose offenses were committed before May, 1995, the Fourth Circuit determined that the policy did not violate the *ex post facto* prohibition because the 1995 policy was a statement of how the VPB intended to exercise its previously-existing discretionary authority. Therefore, the court reasoned, the policy did not have the force and effect of law for purposes of an *ex post facto* analysis. Id.

In this case, as defendants acknowledge, Carmichael is "indisputably eligible" for discretionary parole. [Dkt. No. 57, Def. Mem. at 12] As such, Carmichael's argument that the "parole eligibility" criteria applicable to case changed after he was sentenced is misplaced. [Dkt. No. 50, Pl. Resp. at 14, ¶ 2] Instead, the criteria that changed are the considerations the VPB takes into account when deciding whether to grant a parole-eligible inmate release on discretionary parole. This is consistent with Virginia law, which mandates that the VPB must

adopt rules governing the granting of parole and eligibility for parole, and that it must release eligible inmates who are deemed suitable for parole under such rules. Va. Code § 53.1-136(1) - (2)(a). Before releasing an inmate on discretionary parole, the VPB must conduct a "thorough investigation ... into the prisoner's history, physical and mental condition and character and his conduct, employment and attitude while in prison," and must conclude that "his release on parole will not be incompatible with the interests of society or of the prisoner." Va. Code § 53.1-155(A).

The shift in the considerations the VPB utilizes in deciding whether to grant release on discretionary parole that occurred after Carmichael was sentenced does not implicate the *ex post facto* prohibition. "Inmates may have some ex post facto-protected interest in the rules that guide and govern the exercise of discretion, but they do not have a protected interest in the exercise of discretion itself." Burnette, 687 F.3d at 185-86 (citation omitted). "Thus, that the [VPB] may have decided to 'to get tougher' on certain crimes 'hardly amount[s] to an ex post facto violation' because 'it was within the ... Board's discretion to get tougher." Id. Here, the changes to the Parole Board Decision Factors did not alter the definition of Carmichael's criminal conduct or increase the punishment for his crimes; instead, they only determine the policies by which the VPB's discretion with respect to its discretionary parole decisions in his case would be exercised. Id. As such, those changes cannot form the basis for an *ex post facto* challenge to the VPB's decision to deny Carmichael discretionary parole release. For these reasons, Carmichael's argument that the *ex post facto* prohibition is violated by application of the 1997 parole procedures to him [Dkt. No. 72 at 22 - 25] is without merit.

In addition, Carmichael's *ex post facto* challenge to the change in the number of member votes required for a grant of discretionary parole is meritless. In Jennings, 61 F.Supp.2d at 469,

the plaintiff argued as Carmichael does here that the VPB's application of the voting policy adopted in 1989 that four members must agree to grant parole to inmates serving life sentences for first degree murder was an *ex post facto* violation because he had been convicted in 1984 for crimes committed in 1983. The argument was rejected on the ground that the new policy did not violate the *ex post facto* prohibition because it did not alter the definition of the inmate's criminal conduct or increase the punishment for his crime. Id. Carmichael's reiteration of the same argument here [Dkt. No. 72 at 25 *et seq.*] is without merit for the same reasons.

C. Due Process

Carmichael also contends that his right to due process was violated when his requests for discretionary parole were denied because the VPB failed to provide clearly articulated criteria for discretionary parole review and to maintain procedures for inmates to review their files for potential errors. [Dkt. No. 10, Am. Compl. ¶ 28] His argument is without merit.

A convicted person has no constitutional right to be released before the expiration of a valid sentence. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979); Meachum v. Fano, 427 U.S. 215, 224 (1976). While a liberty interest can be created by a parole system that mandates an inmate's release upon the occurrence of certain conditions, Board of Pardons v. Allen, 482 U.S. 369 (1976), Virginia inmates are released on discretionary parole only if and when they are deemed suitable for release, and under Virginia law the VPB has absolute discretion in such decisions. Garrett v. Commonwealth, 14 Va. App. 154 (1992). Because the decision to grant discretionary parole thus is dependent upon "subjective evaluations and predictions of future behavior," it does not create a liberty interest in inmates' parole release. Gaston v. Taylor, 946 F.2d 340 (4th Cir. 1991) (*en banc*); Sumner v. Tucker, 9 F. Supp. 2d 641,

642 (E.D. Va. 1998).[8]

Moreover, because inmates have no liberty interest in discretionary parole release under Virginia law, "neither can they have any liberty interest in the underlying procedures governing parole determination, so long as the procedures themselves satisfy due process." Hill v. Jackson, 64 F.3d 163, 171 (4th Cir. 1995), quoting Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993), cert. denied, 511 U.S. 1111 (1994). The Fourth Circuit recognizes that "... federal courts must defer to state agencies applying state law and thus their oversight of state parole proceedings has been extremely limited," Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996), and that "... the Constitution requires only a very limited amount of process in considering an inmate for parole." Hoskin v. Brown, 1:14cv759, 2015 WL 527595, at *5 (E.D. Va. Sept. 8, 2015). In fact, to satisfy due process requirements "[a]t most ... parole authorities must furnish to the prisoner a statement of its reason for denial of parole." Burnette, 687 F.3d at 181. "So long as the statement provides a valid ground for denying parole, the federal courts cannot, under the guise of due process, demand more from the state." Burnette v. Fahey, 3:10cv70, 2010 WL 4279403, at *8 (E.D. Va. Oct. 25, 2010).

In this case, as is thoroughly discussed above, the VPB to date has reviewed Carmichael for discretionary parole on ten separate occasions. In each instance, it provided Carmichael with a statement of its reasons for denying him parole, including the serious of his crime and the risk his release would pose to the community. Both of these factors are legitimate bases for denying an inmate release on discretionary parole. Hoskin, 1:14cv759, 2015 WL 527595, at *5; Burnette, 687 F.3d at 181; see also, Fleming v. Murray, 888 F.Supp. 734, 740 (E.D. Va. 1994)

---

[8]For these reasons, Carmichael's reliance on cases which hold that a liberty interest is created when a parole system requires an inmate's release upon the occurrence of certain conditions [Dkt. No. 72 at 28 - 32] is unavailing.

(""[T]he seriousness of the underlying crime is an important consideration in determining eligibility for parole."). The rules governing decisions regarding discretionary parole approved by the Governor in July, 1997, and are set out in the Parole Board Policy Manual; a copy is maintained in each Virginia institution's law library, including the one where Carmichael is confined. [Bennett Aff. ¶ 5]

To the extent that Carmichael argues that inmates should be given access to their files to look for possible errors, it is established to the contrary that due process does not demand such a policy. See Jennings, 61 F. Supp. 2d at 469 ("There is no constitutional requirement that inmates who are eligible for parole be given access to their files.") If an inmate believes that the VPB has relied on erroneous information concerning his institutional adjustment, he can bring his concern to the VPB's attention through a request for appeal or reconsideration. [Bennett Aff. ¶¶ 11 - 12, Enc. C - D].

D. Damages and Immunity

Defendants argue that Carmichael's claims for monetary damages in their official capacities are not cognizable under § 1983, Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989), and that they are entitled to qualified immunity from his claims for monetary damages in their individual capacities. Subsequent to the filing of the renewed Motion for Summary Judgment, however, Carmichael moved to amend his claims to withdraw all requests for monetary damages. [Dkt. No. 64] The Court will grant plaintiff's request, and defendants' arguments regarding their entitlement to immunity from claims for monetary damages thus are now moot.

## IV. Pending Motions

After defendants filed their Motion for Summary Judgment and plaintiff filed his Cross-

Motion, he submitted several motions for various forms of relief, which will be adjudicated as follow:

Plaintiff's Motion for Production of Documents [Dkt. No. 63], in which he seeks to be provided with materials to prove that four members of the Parole Board must agree to grant parole to inmates serving life sentences, will be denied. There is no genuine dispute that "[u]nder the post-1989 policy, four members of the Parole Board must affirmatively vote to grant parole to all parole eligible inmates serving life sentences for first degree murder." Jennings, 61 F. Supp. 2d at 469, citing Virginia Parole Board Policy, Admin. Procedure No. 1.206. For the same reason, plaintiff's Request for Admissions [Dkt. No. 65] and Motion to Compel Response to Plaintiff's Request for Admissions [Dkt. No. 70], in which he seeks to show that defendant Bennett has failed to establish that a vote of four members is required to grant parole to an inmate serving a life sentence, will be denied.

Plaintiff's Motion to Amend [Dkt. No. 64], in which he seeks to amend his complaint by withdrawing his claims for monetary damages and to be provided with a copy of his VDOC file, will be granted in part, and the claims for monetary damages will be dismissed. To the extent that Carmichael seeks to be provided with a copy of his VDOC file, the motion will be denied. Jennings, 61 F. Supp. 2d at 469 (parole-eligible inmates have no right to given access to their files) .

Plaintiff's Motion to Amend [His] Cross-Motion for Summary Judgment [Dkt. No. 66] will be granted. The Court has considered the additional facts and arguments presented therein in determining that the Cross-Motion for Summary Judgment must be denied.

Plaintiff's Motion to Appoint Counsel [Dkt. No. 67] and Motion for Discovery [Dkt. No. 69] will be denied, as moot.

## IV. Conclusion

For the foregoing reasons, defendants' Renewed Motion for Summary Judgment will be granted, and plaintiff's Cross-Motion for Summary Judgment will be denied. Plaintiff's motions for various forms of relief will be adjudicated as indicated above. An appropriate Order and Judgment shall issue.

Entered this 23rd day of Aug 2018.

Claude M. Hilton
United States District Judge

Alexandria, Virginia